## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**ELLIOTT JAMES SCHUCKMAN, et al.,**

    **Plaintiffs,**

    **v.**                                  **Case No. 6:23-cv-01214-HLT-BGS**

**ANDREW BABIN, et al.,**

    **Defendants.**

## MEMORANDUM AND ORDER

Plaintiffs Elliott James Schuckman[1] and Claudia Astudillo Aguirre were sitting in a parked vehicle with their infant son around 9:30 a.m. Defendant Andrew Babin drove past their vehicle in his police cruiser, turned around, approached their vehicle, and asked Schuckman to step out of the vehicle. Officers ultimately search the vehicle and recovered drugs. Plaintiffs bring this 28 U.S.C. § 1983 case pro se[2] and contend Defendants Garden City Police Department and three officers, C.T. Vigil, Stephanie Camarena, and Babin violated their Fourth Amendment rights.

Defendants all move to dismiss under Rule 12(b)(6). Docs. 15 and 23. The Court dismisses the Garden City Police Department because it is not an entity able to be sued under § 1983. The Court dismisses Vigil based on qualified immunity because Plaintiffs have not alleged a clearly established constitutional violation by him. The Court denies Camarena's claim of qualified immunity because she bases her argument on facts outside of the complaint. The Court also denies

---

[1]   Plaintiff's name is Schuckman. The case docket previously reflected that it was Schackman. It has since been corrected. Doc. 28.

[2]   Because Plaintiffs are pro se, their pleadings are construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). But the Court does not assume the role of advocate. *Id.*

Babin's motion because it is not clear collateral estoppel applies and because the facts alleged in the complaint could plausibly state a Fourth Amendment claim against him.[3]

## I.      BACKGROUND[4]

Plaintiffs and their son were sitting in a parked car on the street outside a friend's apartment at 9:30 a.m. Doc. 1 at 4, 7. Babin approached in his police cruiser, did a U-turn, and pulled in behind Plaintiffs' car. *Id.* at 7. Schuckman had a "baseball"[5] between the driver and passenger seats. *Id.* Babin asked Schuckman to step out for officer safety. *Id.* Schuckman did not give consent to search the car. *Id.* Babin told Schuckman to sit in his police cruiser. *Id.* at 8.

Camarena arrived. *Id.* Everyone but the child was asked to exit the car. *Id.*[6] The officers patted them down. *Id.* Camarena withdrew a bag with earrings in it from Astudillo Aguirre's pocket and "said she hit." *Id.* Schuckman again said he did not give consent to search the car. *Id.*

Drugs were subsequently located under the driver and passenger seats. *Id.* Schuckman and Astudillo Aguirre were arrested, and their son was taken into state custody. *Id.* A child-in-need-

---

[3]   Plaintiffs also allege a Fourteenth Amendment claim. But neither side addresses it and thus neither does the Court.

[4]   The following facts are taken from the complaint and are accepted as true for purposes of evaluating the motions to dismiss. Defendants cite to the circumstances under which a court can consider materials beyond the four corners of a complaint when resolving a Rule 12(b)(6) motion, namely documents incorporated by reference, documents referred to in the complaint if central to the claims and the authenticity of which is not disputed, and matters subject to judicial notice. *See* Doc. 15 at 2 (citing *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010)); Doc. 23 at 2 (same). Defendants then refer to additional facts found in affidavits for Schuckman's and Astudillo Aguirre's arrest, which they have attached to the motions to dismiss along with some other documents from the state criminal case stemming from these events. *See* Doc. 15 at 3-4; Doc. 23 at 3-4. It is possible these materials may be properly considered in certain circumstances. But Defendants don't explain how or why it is proper for the Court to consider them in this case. The documents are not referred to in the complaint nor incorporated into the complaint by reference. The documents discuss the underlying events but are not central to Plaintiffs' claims like, for example, a contract might be in a breach-of-contract action. And it is not clear that all the documents would be subject to judicial notice. The Court therefore limits its review to the facts alleged in the complaint.

[5]   The complaint states that there was a "baseball between the driver and passenger seats." Doc. 1 at 7. Elsewhere in the record, there are references to it being a baseball bat. Defendants state in their briefs that it was a baseball bat, which is consistent with Schuckman's arrest warrant. *See* Doc. 15 at 1; Doc. 23 at 1; *see also, e.g.*, Doc. 23-1 at 3. Plaintiffs do not address the discrepancy. The Court sticks with the allegations in the complaint but notes that this discrepancy does not impact the outcome of this order.

[6]   A third adult, who is not a party to this case, may have also been in the car. *See* Doc. 18 at 1.

of-care case was initiated, and Plaintiffs may lose their parental rights. *Id.* at 9. Schuckman is on probation because of this encounter. *Id.*

Plaintiffs allege there was no probable cause or reasonable suspicion to justify "a detainment, search, or to even approach our parked vehicle." *Id.* They allege Camarena had no probable cause to search Astudillo Aguirre. *Id.* Plaintiffs argue that Vigil arrived at the scene to "congratulate and watch," and he continued to "just smile and do nothing" after an illegal search was mentioned. *Id.* Plaintiffs contend that the Garden City Police Department practices progressive policing, meaning they arrest first and ask questions later. *Id.* The constitutional claims asserted are for "unlawful detainment/illegal search" under the Fourth Amendment and violation of due process under the Fourteenth Amendment. *Id.* at 3.

## II.    STANDARD

A complaint survives a Rule 12(b)(6) motion to dismiss when it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible if there is sufficient factual content to allow a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation and citation omitted). A court must accept as true all well-pleaded allegations in the complaint, but it does not accept legal conclusions or conclusory statements. *Id.* at 678-79.

III.    **ANALYSIS**

A.    **Garden City Police Department**

Defendants argue that the Court must dismiss Plaintiffs' claims against the Garden City Police Department because it is a subordinate government agency that cannot be sued. Doc. 15 at 9-10. Defendants are correct. "A city police department is only a subunit of city government and, therefore, is not a governmental entity subject to suit." *Arnold v. City of Wichita Police Dep't*, 2020 WL 136851, at *2 (D. Kan. 2020) (internal quotation and citation omitted); *see also Brown v. Sedgwick Cnty. Sheriff's Off.*, 513 F. App'x 706, 707 (10th Cir. 2013) ("Finally, Brown's claim against the Sedgwick County Sheriff's Office is directed against the wrong defendant, as the Board of County Commissioners of Sedgwick County is the appropriate defendant for claims against any of its subunits."); *Vasquez v. Bascue*, 2023 WL 8018852, at *1 (D. Kan. 2023) ("This Court has held that municipal police departments are subunits of city government and not legal entities subject to suit.").

A subunit of a city government can only be sued if authorized by a statute. *Arnold*, 2020 WL 136851, at *3. Plaintiffs' response brief cites the circumstances in which a <u>municipality</u> may be sued under § 1983. Doc. 18 at 8. But this overlooks that the Garden City Police Department is not a municipality; rather it is a subordinate agency within a municipality. Plaintiffs do not identify any statute that would permit them to bring a § 1983 claim against the Garden City Police Department. The Court therefore dismisses Plaintiffs' § 1983 claims against the Garden City Police Department because it is not an entity that can be sued under that statute.

**B.    Vigil**

Vigil argues that Plaintiffs have not articulated any actions he took that rise to the level of a constitutional violation. Doc. 15 at 9. Vigil claims that this shortcoming entitles him to qualified immunity. The Court agrees.

"In resolving a motion to dismiss based on qualified immunity, a court must consider whether the facts that a plaintiff has alleged make out a violation of a constitutional right, and whether the right at issue was clearly established at the time of defendant's alleged misconduct." *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011) (internal quotation and citation omitted).

The complaint alleges that Vigil "arrived at the scene to congratulate and watch" and "[e]ven after illegal search was mention[ed] he continued to just smile and do nothing." Doc. 1 at 9. This does not allege any apparent constitutional violation by Vigil. There are no facts that Vigil took any action at all toward Plaintiffs or personally participated in the search of Plaintiffs or their car. *See, e.g.*, *Camick v. Wattley*, 2013 WL 6384820, at *6 (D. Kan. 2013) (finding the factual allegations insufficient where the "allegations fail to show that Officer Hills personally participated in [the plaintiff's] seizure on any of the three arrests stemming from the felony theft charges").

Plaintiffs argue that Vigil is liable because he failed to intervene to prevent Babin and Camarena from violating their constitutional rights. Doc. 18 at 5. This argument does not overcome Vigil's claim of qualified immunity for two reasons. First, a claim for failure to intervene requires that the defendant observed or knew of the constitutional violation and had a realistic opportunity to intervene. *Harris v. Mahr*, 838 F. App'x 339, 343 n.2 (10th Cir. 2020). Even assuming a constitutional violation by Babin or Camarena, there are no facts alleged that Vigil had a realistic opportunity to intervene. Vigil is described as a "Supervising Officer," but there's nothing to

suggest Vigil was present when Babin first approached the car, when he ordered the occupants out, or when the pat-downs occurred. *See* Doc. 1 at 8-9. Plaintiffs' allegation that "[e]ven after illegal search was mention[ed] he continued to just smile and do nothing," *id.* at 9, is also too vague to plausibly allege Vigil knew of a constitutional violation and had a realistic chance to intervene. Plaintiffs have therefore not pleaded a plausible constitutional claim against Vigil for failure to intervene.

Second, even if the complaint alleged a plausible claim for failure to intervene, Plaintiffs have not shown that this claim is clearly established in this context. *See Harris*, 838 F. App'x at 342 ("Even assuming without deciding that Plaintiffs had a plausible claim for violation of a constitutional right based on a failure to intervene, the constitutional right was not clearly established."); *see also Shaw v. Schulte*, 36 F.4th 1006, 1020 (10th Cir. 2022) (finding that cited authority did "not clearly establish that an officer must intervene to prevent an illegal search and seizure"). The only authority Plaintiffs cite to support this claim are two Seventh Circuit cases from 1972 and 1995. Doc. 18 at 5. This is not sufficient to show clearly established law. *See Knopf v. Williams*, 884 F.3d 939, 944 (10th Cir. 2018) ("A plaintiff may show clearly established law by pointing to either a Supreme Court or Tenth Circuit decision, or the weight of authority from other courts, existing at the time of the alleged violation." (internal quotation and citation omitted)). These cases are also not on point.[7]

Vigil is thus entitled to qualified immunity. The Court dismisses all claims against him.

---

[7] To be clearly established authority, a case must be particularized to the facts of the case and cannot just recite the constitutional principle at a high level of generality. *Knopf*, 884 F.3d at 944. *Byrd v. Brishke*, 466 F.2d 6, 10 (7th Cir. 1972), involved an alleged assault by police officers and included claims against officers who did not participate directly in the assault but still negligently or intentionally failed to protect the plaintiff from the officers who did. *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995), involved claims of being denied access to the courts. Neither of these cases inform on Vigil's actions here and are therefore not clearly established authorities. *See Harris*, 838 F. App'x at 343 (noting that authority cited "does not discuss unlawful entries or searches, thus making it a highly generalized statement").

**C.      Camarena**

Camarena argues she is entitled to qualified immunity because she arrived on scene after Babin initiated the encounter and was "entitled to rely on his conclusions as to probable cause for the stop and search" as well as his "observations, statements and conclusions" when she arrived on scene and did a pat down of Astudillo Aguirre. Doc. 15 at 8-9. The Court finds Camarena is not entitled to qualified immunity at this stage.

As explained above, a qualified-immunity defense requires the Court to consider whether the facts alleged plausibly allege a constitutional violation that was clearly established at the time. *See Brown*, 662 F.3d at 1164. "Police officers are entitled to rely upon information relayed to them by other officers in determining whether there is reasonable suspicion to justify an investigative detention or probable cause to arrest." *Oliver v. Woods*, 209 F.3d 1179, 1190 (10th Cir. 2000). This is true even if the underlying conclusions drawn by the first responding officer are incorrect so long as the reliance was "objectively reasonable." *Baptiste v. J.C. Penney Co.*, 147 F.3d 1252, 1260 (10th Cir. 1998). Such objectively reasonable reliance may entitle the second officer to qualified immunity. *See id.*

A problem with Camarena's argument is that there are no facts alleged in the complaint that she relied on any conclusions or representations by Babin. *See also* Doc. 18 at 2 (arguing that the record does not indicate what, if any, probable cause or reasonable suspicion existed). The Court limits its determination of qualified immunity at this stage to the facts alleged in the complaint. *See Brown*, 662 F.3d at 1164. "Because the court may not accept as true facts outside of the complaint when deciding a Rule 12(b)(6) motion, it may not grant such a motion on qualified immunity grounds, where same is based on facts outside of the complaint." *Hines v. City of Albany*, 542 F. Supp. 2d 218, 233 (N.D.N.Y. 2008); *see also Anderson v. Blake*, 469 F.3d 910, 913 n.1

(10th Cir. 2006) ("If a defendant wishes to raise a qualified immunity argument based on facts outside the pleadings, he may do so in a motion for summary judgment.").

The complaint alleges only that Camarena arrived on scene while Babin was ordering Schuckman out of the car. Doc. 1 at 8. The officers ordered everyone to exit the car, "started to pat them down," and then Camarena found the bag of earrings on Astudillo Aguirre. *Id.* Even if it could be inferred that Camarena was relying on conclusions, observations, or statements by Babin, there is nothing in the record to indicate what those representations were, and thus no way for the Court to determine if Camarena's reliance was objectively reasonable. The Court thus denies the motion to dismiss as to Camarena.[8]

### D.    Babin

Babin separately moves to dismiss. He argues that (1) Schuckman is collaterally estopped from asserting a lack of probable cause because he was criminally charged and pleaded nolo contendere, (2) Plaintiffs have not plausibly alleged any Fourth Amendment violation as to Babin's approach of the car, and (3) Babin's subsequent request to the occupants to step out of the car for a pat-down was authorized for officer safety. Doc. 23. Babin does not assert qualified immunity or directly challenge any claim related to the search of the vehicle.

### 1.    Collateral Estoppel

Babin first argues that Schuckman cannot "seek relief based on the lack of probable cause because he was already criminally charged." *Id.* at 2. Babin attaches to his motion a Journal Entry

---

[8]  The additional information filed by Defendants—affidavits in support of arrest warrants for Schuckman and Astudillo Aguirre—do not include facts that would change this outcome if considered. Those documents state that Babin initiated the encounter, ordered the occupants of the car out for a safety pat-down, and that Camarena conducted the safety pat-down of Astudillo Aguirre. *See, e.g.*, Doc. 15-3 at 3. There is nothing to suggest Camarena was acting in reliance on any representations of Babin or what those representations were. This is still an insufficient record to grant qualified immunity. Facts may develop through affidavits or depositions to support a claim of qualified immunity (or any other defense) for Camarena. But that determination will have to be made on a more developed record.

of Judgment for Schuckman reflecting that he pleaded nolo contendere to a charge of distribution or possession with intent to distribute methamphetamine. *See* Doc. 23-3 at 1-2.[9] Based on the criminal charges and plea, Babin argues Schuckman is collaterally estopped from asserting his claims in this case.

Even if Schuckman's state-court judgment was subject to judicial notice and thus properly considered in deciding the motion to dismiss, Babin's argument for collateral estoppel fails. "Collateral estoppel, or issue preclusion, is available in actions under § 1983." *Williams v. Henderson*, 626 F. App'x 761, 763 (10th Cir. 2015). But it requires, in part, that "the issue previously decided is identical with the one presented in the current action." *Id.*

Nothing in the complaint (or the record overall) suggests that Schuckman litigated the issue of probable cause in his criminal case. The only thing Babin relies on is the fact that Schuckman pleaded nolo contendere to one of the underlying charges. This does not demonstrate that any substantive claim asserted by Schuckman in this case was adjudicated in the criminal case. The fact that Schuckman <u>could</u> have challenged Babin's conduct in his criminal case is irrelevant if he didn't actually do so. *See id.* at 764 n.4 ("Whether Mr. Williams could have raised his present claims in the criminal case is irrelevant: 'A judgment is not conclusive in a subsequent action as to issues which might have been but were not litigated and determined in the prior action.'" (quoting *Adams v. Kinder-Morgan, Inc.*, 340 F.3d 1083, 1094 (10th Cir. 2003))).

The cases cited by Babin do not support his collateral-estoppel defense. Those cases involved a suppression motion or trial where identical issues had been previously litigated. *See McKnight v. Goodman*, 2018 WL 572051, at *2 (D. Kan. 2018) (finding that the "claims in [the

---

[9]   The charges against Astudillo Aguirre were dismissed. *See* Doc. 23-4. Babin only makes the collateral-estoppel argument as to Schuckman. Doc. 23 at 2 n.1.

plaintiff's] Complaint were the subject of a Motion to Suppress in [the plaintiff's] criminal case"); *Sibert v. Phelan*, 901 F. Supp. 183, 186-87 (D.N.J. 1995) ("During the course of the criminal trial, Mr. Sibert sought to suppress evidence of the drugs and the weapon seized during his arrest. By doing so he affirmatively put into issue the essential facts of the present inquiry—namely the conduct of the police at the time of his arrest."); *Searing v. Hayes*, 684 F.2d 694, 697 (10th Cir. 1982) ("We agree that the plaintiffs' claim under this civil rights complaint involves the same issue of legality as in the suppression hearing during the state court criminal proceedings."); *cf. Williams*, 626 F. App'x at 764 (finding collateral estoppel did <u>not</u> apply because the underlying "suppression motion involved an objection about procedural irregularity that did not implicate the pertinent claims of constitutional misconduct asserted by" the plaintiff).

Babin's reliance on *Jackson v. Loftis*, 189 F. App'x 775 (10th Cir. 2006), is also misplaced. *Jackson* involved a civil case alleging arrest on false charges as a pretext for racial profiling. *Id.* at 777. The underlying issue in the civil case was the validity of the <u>arrest</u>. The plaintiff had pleaded nolo contendere to the charges he was arrested for in the criminal case. *Id.* at 779-80. The Tenth Circuit found that "Plaintiff cannot now challenge the existence of probable cause for, and hence the validity of, his arrest on charges he conclusively admitted were valid." *Id.* Rather, "a plea of nolo contendere to criminal charges, and the consequent adjudication of guilt thereon, estop the defendant from later disputing the validity of those charges as a basis to deny the existence of probable cause for his arrest." *Id.* at 779.

In *Jackson*, the plaintiff challenged "his arrest on the basis that he <u>did not commit the charged offenses</u>—a claim that is directly repudiated by a plea admitting the validity of those offenses." *Id.* at 779 n.2 (emphasis in original). But here, Plaintiffs challenge the search of their bodies and the car, not their arrests. The validity of those searches has not been adjudicated based

solely on Schuckman's nolo contendere plea to the underlying charges.[10] *Jackson* explained this distinction, stating that "search claims . . . are functionally distinct from false arrest claims." *Id*.

Babin has not demonstrated that the same issue in this case was previously adjudicated and thus has not shown that collateral estoppel applies. Babin's motion on this point is denied.

### 2.    Approach of Car

Babin's second argument is that the complaint "does not contain any facts that support a seizure in violation of the Fourth Amendment" because it was a consensual encounter. *See* Doc. 23 at 8-9. Plaintiffs respond that certain facts suggest the encounter was something more, namely that Babin called in a suspicious vehicle and asked Schuckman to step out of the car. Doc. 26 at 4. The Court finds it cannot determine the nature of the encounter at this stage.

Consensual encounters between police and citizens do not implicate the Fourth Amendment. *United States v. Hammond*, 890 F.3d 901, 904 (10th Cir. 2018). An officer can approach a person and ask questions without violating the Fourth Amendment so long as the person is "free to refuse to answer questions and to end the encounter." *Oliver*, 209 F.3d at 1186. In contrast, investigative detentions must be based on a reasonable suspicion of criminal activity, and arrests must be supported by probable cause. *Hammond*, 890 F.3d at 904. Whether and to what extent an encounter constitutes a seizure is based on the totality of the circumstances. *United States v. Madden*, 682 F.3d 920, 925 (10th Cir. 2012).

Plaintiffs allege that Babin approached the vehicle and asked Schuckman to step out and "go to his vehicle." Doc. 1 at 7. Babin then told Schuckman to sit in the police cruiser while everyone else was required to exit. *Id.* at 8. These allegations suggest Plaintiffs may not have been

---

[10]   Plaintiffs' response states that Schuckman tried to withdraw his plea and has appealed denial of that request to the Kansas Supreme Court. Doc. 26 at 2.

"free to refuse to answer questions and to end the encounter," meaning it would not have been a consensual encounter. *Oliver*, 209 F.3d at 1186; *see also Madden*, 682 F.3d at 925 ("As part of a consensual encounter, an officer may approach an individual, ask a few questions, ask to examine the individual's identification, and even ask for consent to search as long as the police do not convey a message that compliance with their requests is required." (internal quotation and citation omitted)).[11] And if it was not a consensual encounter, Babin was required to have reasonable suspicion or probable cause. The Court cannot determine from the pleadings whether either of those standards apply or were met.[12] Thus, on the current facts, the Court cannot conclude that the complaint fails to state a plausible Fourth Amendment violation based on the nature of the encounter.[13]

### 3.    Pat-Down for Officer Safety

Babin's third argument is that he was justified in asking Plaintiffs to step out of the car and to conduct a pat-down for officer safety because he saw a baseball bat between the driver and passenger seats. Doc. 23 at 9-11. Based on this fact, Babin argues Plaintiffs fail to state a Fourth Amendment claim based on the pat-down. *Id.* at 11.[14] Babin's motion on this point is denied.

---

[11]   Babin's own motion states that he called in the vehicle as "suspicious." Doc. 23 at 3. Babin's affidavit in support of Schuckman's arrest warrant states that Babin "had reasonable suspicion to check on the vehicle." Doc. 23-1 at 3.

[12]   Even if the Court considered the additional materials cited by Defendants, namely that the vehicle was in a neighborhood known for drug activity and violent crime, *see* Doc. 23 at 3, this would not warrant dismissal at this stage. *See Illinois v. Wardlow*, 528 U.S. 119, 124 (2000) ("An individual's presence in an area of expected criminal activity, standing alone, is not enough to support a reasonable, particularized suspicion that the person is committing a crime.").

[13]   The Court does not determine whether Babin's approach of the car was justified or when the nature of the encounter changed, if at all. It just finds that under the facts alleged, the encounter could've been more than a consensual encounter. Babin does not otherwise challenge Plaintiffs' claim that there was no probable cause or reasonable suspicion for the encounter.

[14]   It is somewhat unclear whether Babin contends that he was authorized to order the occupants out of the car regardless of whether he had any suspicion of danger, *see* Doc. 23 at 9-10, or whether it was the presence of the baseball bat that justified both ordering the occupants out and the pat-down, *see* Doc. 27 at 5 (arguing that the "presence of a weapon" justified both actions). The Court focuses on the justification for the pat-down as Plaintiffs' claims seem to flow primarily from that action.

An officer may conduct a protective frisk "if the officer harbors an articulable and reasonable suspicion that the person is armed and dangerous." *Hammond*, 890 F.3d at 905 (internal quotation and citation omitted). Here, the only fact Babin relies on to justify the pat-down is the presence of the baseball bat. Doc. 23 at 11. The Court cannot conclude at this stage that the presence of a baseball bat (or baseball), standing alone, created an articulable and reasonable suspicion in Babin that Plaintiffs were armed and dangerous.

Babin relies on *United States v. King*, 990 F.2d 1552 (10th Cir. 1993), to argue that the baseball bat gave him reason to believe Plaintiffs were armed and dangerous. *See* Doc. 27 at 5-6. In *King*, an officer who had been responding to a car accident in an intersection approached an uninvolved car that was honking excessively. 990 F.2d at 1555. As she approached to speak to the driver, she saw a gun within reach of the driver and passenger and immediately ordered them out of the car. *Id.* The Tenth Circuit found that "when she observed an apparently loaded pistol within the immediate reach of both him and his passenger" as she approached to "advise[] King of the hazardous conditions his honking created," the officer "was entitled to separate Defendants from the pistol by ordering them out of the car for the duration of her advisement." *Id.* at 1562.

The Court disagrees that *King* is sufficiently analogous to warrant dismissal at this stage. There are meaningful differences between a gun and a baseball bat. Certainly, the presence of a baseball bat or similar item could justify further intervention or precautions by police in some circumstances.[15] But the Court is not prepared to conclude at this stage that the presence of a

---

[15] *See, e.g.*, *United States v. DeJear*, 552 F.3d 1196, 1200-01 (10th Cir. 2009) (finding reasonable suspicion to detain where officers approached a parked vehicle in an area of criminal activity; one occupant was holding a baseball bat; and the defendant-occupant had his feet out of the vehicle, appeared very nervous, was stuffing his hands down in the back of the seat, and did not comply with officers' requests to show his hands); *State v. Miller*, 608 P.2d 595, 596-97 (Or. Ct. App. 1980) (finding reasonable "the officer's belief that the baseball bat could be used as a weapon to harm him" where officer saw baseball bat in vehicle after it was stopped following a high-speed chase and aggressive driving, the suspects exited the vehicle without prompting and were suspected of being intoxicated, and officers testified to experiences where bats had been used as weapons). In these cases, the presence of a baseball bat was a consideration, but it was not the only consideration as it is here.

baseball bat in a car with no other relevant facts automatically leads to the conclusion that the occupants are armed and dangerous or that other weapons may be present. *See also* Doc. 26 at 5 (arguing that the presence of a baseball bat, hammer, or tire iron does not automatically justify protective searches). This is especially true when the nature and reason for the encounter is unsettled. *See* Section III.D.2.; *see also United States v. House*, 463 F. App'x 783, 788 (10th Cir. 2012) ("[I]f a policeman sees a suspicious bulge which possibly could be a gun in the pocket of a pedestrian who is not engaged in any suspicious conduct, the officer may not approach him and conduct a frisk. And this is so even though the bulge would support a frisk had there been a prior lawful stop." (quoting Wayne R. Lafave, 4 Search and Seizure § 9.6(a) (2004))). The Court denies Babin's motion on this point.

## IV.   CONCLUSION

THE COURT THEREFORE ORDERS that the Motion to Dismiss by the Garden City Police Department, Vigil, and Camarena (Doc. 15) is GRANTED IN PART AND DENIED IN PART. The motion is GRANTED as to the Garden City Police Department and Vigil and those parties are DISMISSED. The motion is DENIED as to Camarena.

THE COURT FURTHER ORDERS that the Motion to Dismiss by Babin (Doc. 23) is DENIED.

IT IS SO ORDERED.

Dated: March 1, 2024                    /s/ *Holly L. Teeter*
                                        HOLLY L. TEETER
                                        UNITED STATES DISTRICT JUDGE