IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ELLIOTT J. SCHUCKMAN, et al.,

    Plaintiffs,

    v.

ANDREW BABIN, et al.,

    Defendants.

Case No. 6:23-cv-01214-HLT-BGS

## MEMORANDUM AND ORDER

Plaintiffs Elliott Schuckman and Claudia Astudillo Aguirre were sitting in a vehicle parked in front of a Garden City, Kansas apartment building known for drug trafficking. A Garden City police officer approached their vehicle. Officers eventually patted-down Plaintiffs and recovered methamphetamine and drug-trafficking paraphernalia. Plaintiffs were arrested on drug charges and lost custody of their child. Schuckman also pleaded no contest to a drug-related offense.

Plaintiffs now sue the officers under § 1983 claiming the officers violated the Fourth Amendment during the encounter.[1] Plaintiffs also claim these violations denied them due process because they resulted in Schuckman's prosecution and the loss of custody of their child. Plaintiffs seek $20 million in damages. Defendants move for summary judgment. Doc. 53. They assert qualified immunity for Plaintiffs' Fourth Amendment claims. They also argue that Plaintiffs' due process claim is not cognizable because it would require a review of state-court proceedings. The

---

[1] The Court is mindful of Plaintiffs' pro se status and liberally construes their filings and holds them to a less stringent standard than those drafted by lawyers. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). But the Court does not assume the role of advocate. *Id.*

Court determines there was no clearly-established constitutional violation and that the Court cannot review the state-court proceedings through § 1983. The Court grants Defendants' motion.

I.     BACKGROUND[2]

Defendant Andrew Babin was on patrol in Garden City, Kansas in a marked police cruiser on the morning of October 15, 2021. Doc. 54-2 at 1-2. Babin was patrolling a part of Garden City known for drug trafficking, exchanges of stolen property for drug paraphernalia, and violence. *Id.* Babin had patrolled this part of the city frequently and was familiar with its reputation. *Id.* at 2.

At or around 9:30 a.m., Babin saw a late-model Chrysler 300 parked on the street outside an apartment building in the area. *Id.* This building was known for drug trafficking, which frequently occurred there around this time of the morning. Babin had responded to reports of a shooting at the building less than a year earlier. *Id.* at 1. Babin saw the vehicle's driver (Schuckman) hunched over in the vehicle's front seat.[3] *Id.* at 2. He was not sure if Schuckman was asleep, using drugs, or had overdosed. *Id.* Babin saw Schuckman's head jerk upward, and he saw Schuckman staring at him as he drove by. *Id.*

Babin turned around and pulled in a few feet behind the parked vehicle. *See id.* Babin did not activate his cruiser's lights or siren. *Id.* He gave no verbal commands. *Id.* Babin exited the cruiser and approached the vehicle. *Id.* Schuckman rolled down his window. *Id.* Babin saw three

---

[2]   These facts are taken from the summary-judgment record and viewed in the light most favorable to Plaintiffs. But the Court deems Defendants' facts admitted for purposes of summary judgment because Plaintiffs have failed to properly controvert Defendants' statement of material facts with support from admissible record evidence. *Winter v. Mansfield*, 2022 WL 3652464, at *5-7 (10th Cir. 2022). Astudillo Aguirre did not file a response to Defendants' motion and therefore has not controverted anything. Schuckman did file a response. *See* Doc. 58. But he does not separately respond to any of Defendants' facts, and the facts he attempts to controvert are not controverted properly under the Federal Rules of Civil Procedure or this District's local rules. Fed. R. Civ. P. 56(c)(1)(A); D. Kan. R. 56.1(b)(1).

[3]   Schuckman questions evidence indicating that he was "slumped over" in the driver's seat of his vehicle and that the neighborhood he was parked in was known for "drug activity." Doc. 58 at 2, 10. But Schuckman does not support his characterization of the facts with references to admissible record evidence.

other individuals in the vehicle, one of whom was a child. *Id.* Babin recognized one of the three adults as Dicky Montoya. *Id.* Babin knew Montoya had been involved in drug trafficking and lived in the adjacent building. *Id.* at 1-2. Montoya's apartment was where Babin recently had responded to the shooting. *Id.* at 1. Babin also saw a baseball bat between the vehicle's front seats. *Id.* at 3.

Babin asked Schuckman for his name and date of birth. *Id.* at 3. Schuckman was agitated, confrontational, and seemed to deliberately evade Babin's questions.[4] *Id.* Babin instructed Schuckman out of the vehicle and patted him down for officer safety. *Id.* Babin discovered two knives during the pat down. *Id.*

Defendant Stephanie Camarena arrived as Babin was patting down Schuckman. *Id.* Camarena patted down one of the other vehicle occupants, Astudillo Aguirre. Doc. 54-3 at 1. During the pat down, Astudillo Aguirre reached into her sweatshirt's pocket and appeared to retrieve an object. *See id.* When asked, Astudillo Aguirre told Camarena that she had an earring in her hand. *Id.* Astudillo Aguirre showed Camarena the earring. *Id.* at 2. It was in a plastic bag along with a white crystalline residue. *Id.* Through her experience, Camarena identified the residue as methamphetamine. *Id.* Astudillo Aguirre admitted to Camarena she had used methamphetamine two days earlier. *Id.* Camarena showed the plastic bag to Babin. Doc. 54-2 at 3. Camarena and Babin believed they had probable cause to search Plaintiffs' vehicle because of the residue and Astudillo Aguirre's admission. *Id.*; Doc. 54-3 at 2. Babin and Camarena searched the vehicle and discovered nearly 30 grams of methamphetamine, a scale, and 17 plastic bags. Doc. 54-2 at 4; Doc. 54-3 at 2.

---

[4] Schuckman questions Defendants' characterization of his demeanor during his initial interaction with Babin and suggests that he wasn't "nervous." *See* Doc. 58 at 10. Again, Schuckman fails to cite record facts in support.

Schuckman and Astudillo Aguirre were arrested and charged with multiple criminal offenses. Doc. 54-10; Doc. 54-11; Doc. 54-12. Schuckman pleaded no contest to a single drug-related criminal charge. Doc. 54-14. Plaintiffs contend that their arrests and criminal charges caused them to lose custody of their child. Doc. 1 at 8-9.

## II.     LEGAL STANDARD

Summary judgment is appropriate if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of establishing the absence of a genuine issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant to demonstrate that genuine issues remain for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Courts view the facts and any reasonable inferences in a light most favorable to the non-moving party. *Henderson v. Inter-Chem Coal Co.*, 41 F.3d 567, 569 (10th Cir. 1994). "An issue of material fact is genuine if a reasonable jury could return a verdict for the nonmoving party." *Id.* (internal quotation and citation omitted).

## III.    ANALYSIS

The Court first discusses Plaintiffs' Fourth Amendment claim and Defendants' qualified-immunity defense. The Court then turns to the due process claim and Defendants' argument that the Court cannot review state court proceedings through § 1983.

### A.     **Fourth Amendment Claim and Qualified Immunity**

Plaintiffs contend that Babin's approach of their vehicle, the pat downs, and the vehicle search violated their Fourth Amendment rights. Defendants argue they are entitled to qualified immunity. Qualified immunity is a powerful defense for public servants that protects "all but the plainly incompetent or those who knowingly violate the law" from the burdens of lawsuits. *Lewis*

*v. Tripp*, 604 F.3d 1221, 1225 (10th Cir. 2010) (internal quotation and citation omitted). After a defendant raises qualified immunity, the plaintiff bears the "burden of showing both (1) a violation of a constitutional right; and (2) that the constitutional right was clearly established at the time of the violation." *Winter*, 2022 WL 3652464, at *8 (citations and quotation marks omitted). "[W]hich of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand" is committed to the Court's discretion. *Id.*

There are two problems out of the gate for Schuckman and Astudillo Aguirre. First, only Schuckman responded to Defendants' motion. Second, Schuckman limits his response almost entirely to the legality of Babin's approach of the vehicle. The Court addresses these matters before turning to the remainder of Plaintiffs' Fourth Amendment claim.

<u>First</u>, Astudillo Aguirre did not respond to Defendants' motion.[5] Schuckman did, but the Court cannot construe Schuckman's response as also coming from Astudillo Aguirre. Schuckman is a pro se litigant. His statutory right to litigate for himself under 28 U.S.C. § 1654 does not extend to others. Schuckman cannot represent Astudillo Aguirre. 28 U.S.C. § 1654; *Bunn v. Perdue*, 966 F.3d 1094, 1098 (10th Cir. 2020) ("A litigant may bring his own claims to federal court without counsel, but not the claims of others."). Astudillo Aguirre must either pursue her claims herself or retain an attorney to do so. Her lack of response is significant because she is the only person who

---

[5] Astudillo Aguirre did file one document, but not in response to Defendants' motion. Doc. 62. The Court reads Astudillo Aguirre's filing in part as a request to resolve an outstanding ICE detainer against her. This request is denied. The present case involves claims for damages against two Garden City police officers unrelated to the relief Astudillo Aguirre's motion seeks. Regardless of whether Astudillo Aguirre's request is construed as a motion for a preliminary injunction under Rule 65(a) or to supplement Plaintiffs' complaint under Rule 15(d), the Court denies it. *See Little v. Jones*, 607 F.3d 1245, 1251 (10th Cir. 2010) (party seeking a preliminary injunction must establish "a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint" (citations and quotation marks omitted)); *Chandler v. James*, 783 F. Supp. 2d 33, 39 (D.D.C. 2011) (a Rule 15(d) motion to supplement is properly denied when the matters in the supplemental pleading "have no relation to the claim originally set forth and joinder will not promote judicial economy or the speedy disposition of the dispute between the parties" (citations and quotation marks omitted)).

has Fourth Amendment standing to challenge her pat-down. This means that Camarena's assertion of qualified immunity for Astudillo-Aguirre's pat-down is unchallenged. Because Astudillo Aguirre did not respond and carry her burden, Camarena is entitled to qualified immunity. *Smith v. McCord*, 707 F.3d 1161, 1162 (10th Cir. 2013) (affirming summary judgment for the defendants when the plaintiff failed to respond to their assertion of qualified immunity).

Second, Schuckman's response to Defendants' assertion of qualified immunity is only really focused on one aspect of the encounter—the legality of Babin's initial approach. *See* Doc. 58 at 3-8. Implicit in Schuckman's response is an assumption that if Babin's approach and/or Schuckman's pat-down were unconstitutional, then the vehicle search must have been as well.[6] But this assumption is wrong. Fruit of the poisonous tree and the exclusionary rule are inapplicable to § 1983 claims.[7] *Shaw v. Schulte*, 36 F.4th 1006, 1017 (10th Cir. 2022). Schuckman does not question whether Babin and Camarena had probable cause to search the vehicle based on the

---

[6] Schuckman's standing to challenge Babin's approach, his own pat-down, and the vehicle's search are not questioned. But his ability to challenge these does not also give him the indirect ability to contest Astudillo Aguirre's pat down even though the methamphetamine residue on her earring is the stated basis for the officers' probable cause to search. *See generally United States v. Arango*, 912 F.2d 441, 447-48 (10th Cir. 1990) (finding it unnecessary to examine the lawfulness of a vehicle search that generated probable cause to arrest because the defendant lacked Fourth Amendment standing to challenge the search); *see also* 3 W. LaFave, J. Israel, N. King & O. Kerr, Criminal Procedure § 9.4(c) (4th ed. 2023). Fourth Amendment rights are personal and "may not be vicariously asserted." *Rakas v. Illinois*, 439 U.S. 128, 134 (1978) (internal quotation marks and citations omitted)). Astudillo

[7] A search is not necessarily constitutionally infirm if the information it is based on was illegally obtained. *Townes v. City of N.Y.*, 176 F.3d 138, 145, 147-48 (2d Cir. 1999) (distinguishing the exclusionary rule from the Fourth Amendment and holding the former inapplicable to § 1983 claims); *see also generally Estate of Taylor v. Salt Lake City*, 16 F.4th 744, 753-54 (10th Cir. 2021) (same). Evidence derived from unconstitutional investigatory conduct might be subject to the exclusionary rule as fruit of the poisonous tree. But exclusion is a judicially fashioned remedy used to deter unconstitutional investigatory conduct. *Townes*, 176 F.3d at 145-46. It is not itself a constitutional right. *Estate of Taylor*, 16 F.4th at 753 ("[T]he [exclusionary] rule is a judicially created remedy designed to safeguard Fourth Amendment rights through . . . deterren[ce] . . . rather than a personal constitutional right of the party aggrieved." (internal quotation marks and citations omitted)). And it is not available to claimants in § 1983 cases. *Townes*, 176 F.3d at 149. Probable cause to search is not vitiated simply because the information it's based on was illegally or unconstitutionally obtained. *Id.* ("The lack of probable cause to search [for example] does not vitiate the probable cause to arrest, because (among other reasons) the fruit of the poisonous tree doctrine is not available to assist a § 1983 claimant."). Probable cause that comes from unconstitutionally obtained information is still probable cause. *See id.*

methamphetamine residue detected on Astudillo Aguirre's earring and her admission to having recently used the drug. Babin and Camarena are therefore entitled to qualified immunity for the vehicle search. *Id.* at 1017-18 (even absent reasonable suspicion to support initially prolonging a traffic stop for a canine sniff, a police officer was entitled to qualified immunity for continuing to prolong the stop after the sniff alerted the officer to drugs in the vehicle).

<u>Remaining</u> are the qualified-immunity issues tied to Babin's approach of the vehicle and Schuckman's pat down. Schuckman argues Babin's approach and pat down violated his Fourth Amendment rights because they were based on less than reasonable suspicion. The Court proceeds directly to the second qualified-immunity prong: whether these rights were clearly established.

A clearly established right is one that makes it "sufficiently clear" to every reasonable official "that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (per curiam) (quotations omitted). A plaintiff shows that conduct violated a clearly established right by coming forward with a precedential case involving the same conduct in a closely analogous factual context. The question for the Court is "whether the violative nature of *particular* conduct is clearly established . . . in light of the specific context of the case, not as a broad general proposition." *Id.* at 12 (quotations omitted). A plaintiff cannot simply rely on broad propositions of the law or cases that are similar only at a high level of abstraction.

Schuckman cites *United States v. Wood*, 106 F.3d 942 (10th Cir. 1997). *Wood* deals with the need for police officers to have reasonable suspicion before detaining the driver of a vehicle longer than necessary to accomplish a traffic stop's mission. *Id.* at 945-46. The opinion stands for the unremarkable and well-established principles that (1) traffic stops can last no longer than necessary to accomplish their mission without reasonable suspicion and (2) innocuous factors can

only work in the aggregate to support reasonable suspicion if there are "concrete reasons" to interpret them that way. *Id.* at 945-48.

*Wood* does not address whether or when the Fourth Amendment's protections are triggered when a police officer approaches a parked vehicle because *Wood* was a traffic stop. It does not suggest that a police officer must have reasonable suspicion before approaching a parked vehicle. Nor does *Wood* have anything to say about whether a police officer can permissibly ask about an individual's identity and date of birth on less than reasonable suspicion. It does not address what facts may or may not establish the requisite suspicion necessary to support a pat down for weapons. In short, *Wood*'s utility is limited to general statements of the law. It does not make it clear cut or "black and white" that Babin's approach of Plaintiffs' vehicle or his pat down of Schuckman for officer safety violated the Fourth Amendment. Schuckman does not meet his burden. Schuckman has not shown a violation of clearly established rights. Both officers are therefore entitled to qualified immunity.

### B. Due Process Claim

Defendants also seek summary judgment on Plaintiffs' due process claim. Plaintiffs' theory of liability appears to be—as best the Court can discern—that their due process rights were violated by Schuckman's prosecution and the loss of custody of their child because those results were set into motion by Defendants' illegal search of their vehicle. The problems with this claim are myriad. But, as Defendants argue, one of its more fundamental problems is that it invites this Court to review the results of underlying state-court proceedings. Although not invoked in Defendants' briefing by name, two different doctrines embody this principle and apply to different parts of Plaintiffs' due process claim.

The first doctrine is described by the Supreme Court's opinion in *Heck v. Humphrey*, 512 U.S. 477 (1994). *Heck* says that a state prisoner cannot seek damages under § 1983 for violations of his constitutional rights that resulted in his imprisonment unless his conviction is first called into question by writ of habeas corpus, reversed, expunged, or somehow otherwise invalidated. *Id.* at 486-87. Here, the summary judgment record does not show that Schuckman's criminal conviction has been set aside or reversed. *Heck* bars Schuckman's claim for damages under § 1983 in connection with his conviction.

The second doctrine is *Rooker-Feldman*.[8] *Rooker-Feldman* says that a party defeated in state court cannot then turn around and seek federal district court review by claiming injury from the state court's judgment. *Rooker-Feldman* is not limited to claims for injunctive relief in the Tenth Circuit. *P.J. ex Rel. Jensen v. Wagner*, 603 F.3d 1182, 1193 (10th Cir. 2010). The doctrine also applies to damages claims. *Id.* Here, Plaintiffs complain that they have been injured by unfavorable state proceedings that have resulted in the loss of custody of their child.[9] They seek an award of damages under § 1983 based on the alleged incorrectness of that result. *Rooker-Feldman* (as it's applied in the Tenth Circuit) prohibits this.[10] Defendants are therefore entitled to summary judgment on Plaintiffs' due process claim.

---

[8] *See Rooker v. Fid. Trust Co.*, 263 U.S. 413 (1923); *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983). The doctrine's limitations are jurisdictional. Where *Rooker-Feldman* applies, this Court lacks jurisdiction and dismisses those portions without prejudice. *Millard v. Camper*, 971 F.3d 1174, 1186 (10th Cir. 2020).

[9] The nature of these proceedings is unclear from the summary judgment record before the Court.

[10] The Court acknowledges that appellate courts are split on this issue. Even within the Tenth Circuit there is some disagreement about *Rooker-Feldman*'s application. *Compare P.J. ex rel. Jensen*, 603 F.3d at 1193 (*Rooker-Feldman* applies to damages claims even though the state-court judgment did not award them); *Market v. City of Garden City, Kan.*, 723 F. App'x 571 (10th Cir. 2017) (same), *with Cowan v. Hunter*, 762 F. App'x. 521 (10th Cir. 2019) (*Rooker-Feldman* does not apply to damages claims where the underlying state court judgment was for nonmonetary relief). In at least one other circuit, *Rooker-Feldman* only applies to damages claims if damages were awarded as part of the underlying state-court judgment. *E.g., Gilbank v. Wood Cty. Dep't of Human Servs.*, 111 F.4th 754, 792-96 (7th Cir. 2024) (en banc) (Kirsch, J.), *cert. denied*, 2025 WL 581600 (2025). The Tenth Circuit's opinion in *Jensen* is published. The Tenth Circuit held in *Jensen* that *Rooker-Feldman* applied to a § 1983 damages claim even though the underlying adverse state-court judgments were nonmonetary. 603 F.3d at 1194. The Court is bound by this opinion.

## IV.    CONCLUSION

Defendants are entitled to qualified immunity for Plaintiffs' Fourth Amendment § 1983 claims. Plaintiffs' due process claim is not cognizable. The Court therefore grants Defendants' motion for summary judgment (Doc. 53).

THE COURT THEREFORE ORDERS that Defendants' motion for summary judgment (Doc. 53) is GRANTED.

THE COURT FURTHER ORDERS that Astudillo Aguirre's miscellaneous request for relief (Doc. 62) is DENIED.

The case is closed.

IT IS SO ORDERED

Dated: March 6, 2025                         /s/ *Holly L. Teeter*
                                                           HOLLY L. TEETER
                                                           UNITED STATES DISTRICT JUDGE